We'll call our first case of the morning, which is Agenda No. 4, Case 115-804, People of the State of Illinois v. Terrace Stahl. Good morning, Your Honors. May it please the Court, I am Assistant Attorney General Gopi Kashyap on behalf of the people of the State of Illinois. The Fifth District here erred as a matter of law by creating an absolute rule that a defendant's inability to furnish his counsel with information concerning the events of the crime due to amnesia automatically renders him unfit to stand trial. This Court should reverse the Fifth District's legal error and reaffirm that fitness must be judged on the totality of the circumstances. Applying that test here, the defendant is fit for trial. I'd like to begin with the fitness standard. A defendant is fit where he is able to understand the nature and purpose of the proceedings against him and assist in his defense. This standard derives from the broader constitutional due process right to a fair trial, prohibiting the prosecution of unfit defendants. And it's virtually identical to standards employed in every jurisdiction in this country. And every jurisdiction in this country to have considered the effect of a defendant's amnesia as to the events of the crime on his fitness has concluded that that amnesia does not automatically make him unfit to stand trial. So the people ask this Court to align itself with those other courts and hold that this limited type of amnesia does not automatically make a defendant unfit. Such a holding would be consistent with this Court's precedent. In People v. Pridgen and People v. Scarruzza, this Court held that a defendant's amnesia as to the events of the crime by itself does not raise even a bona fide doubt as to his fitness, and so a fitness hearing is not even warranted. If such amnesia... Are you asking for a bright-line rule regarding amnesia? We are not, Your Honor. We're asking... So you're taking the position that the trial court did not base this on all the evidence in front of them, just strictly on the amnesia? Yes, Your Honor. And that's evident from the evidence that was before the trial court. The evidence before the trial court was Dr. Gilbert's opinion, which stated that notwithstanding the short-term memory deficits that defendants suffered from, his amnesia as to the events of the crime alone rendered him unfit. Mr. O'Gara testified, the criminal defense attorney, also that the amnesia by itself rendered the defendant unfit. In contrast, the People's experts had said that initially the short-term memory deficits rendered him unfit, but that amnesia alone, if that was all that there was, wouldn't render him unfit. So may I ask, just in terms of what is the evidence in front of us, should we consider when we're reviewing the trial court's decision, taking into consideration as well the two earlier expert opinions that were stipulated to and the State conceded that he was unfit based on those? Yes, Your Honor. So we should look at those two plus the one that was the expert opinion that was presented during the restoration hearing? Yes, Your Honor. We agree that all three reports are before the court. The people stipulated to those, and the court can certainly consider them. But I'd like to note that fitness is a fluid concept, and so Dr. Montani's report was the one that provided the most recent evidence of the defendant's mental capacity, whereas Dr. Rabin's and Gilbert's reports were a year earlier. And so while they're perfectly relevant, I think that Dr. Montani's report was more current in that respect. And given the statute's – given that the statute looks at a defendant's present ability, Dr. Montani's report probably should be given more weight. And how do they compare, the two that the State stipulated to and the later one? Sure. So the two that the State stipulated to, first was defense expert Dr. Gilbert, who stated that defendants suffered from short-term memory deficits, but also that he has amnesia as to the events of the crime. And he concluded that even if the short-term memory deficits were to improve, the amnesia by itself rendered the defendant unfit. Dr. Rabin, the State's expert, stated that it was the short-term memory deficits that rendered the defendant unfit. And if the defendant suffered solely from the limited amnesia as to the events of the crime, that Dr. Rabin would still find the defendant – that the defendant would – Dr. Rabin would find the defendant fit for trial. And Dr. Montani, a year later, stated that defendants' short-term memory deficits had improved and that all that was left was the defendant's amnesia as to the events of the crime and that that standing alone did not render the defendant unfit. What do we do with the portion of the 104-10 that specifically enumerates a defendant's ability to observe, recollect, and relate occurrences – and this is a quote – especially those concerning the incidents alleged as one of the three factors to consider in determining whether the defendant is able to assist in his own defense? Yes, Your Honor. We agree that it's certainly a factor, and it's an important factor. But under the totality of the circumstances, we don't believe that it's dispositive. And what the Fifth District did here was elevate it to be dispositive, that if any defendant suffers amnesia as to the events of the crime, it automatically renders them unfit. And we think that's contrary to the totality of the circumstances test, particularly in this case where there's all of this evidence showing that the defendant can assist in his defense. He doesn't have an issue communicating with counsel. He understands what's happening in the proceedings. He understands his options. He can talk to counsel about his trial strategy. He can discuss evidence regarding his relationship with the victims. I think it's important in this case to note that the victims were all known to him. One is the babysitter for his son. The other is his best friend. And the third is his ex-wife. So he has a preexisting relationship with these victims. Ms. Kashub, isn't it true, though, that the defendant's ability to observe and to recollect and relate to the occurrences of the crime is relevant? And wouldn't that, as is in the plain language of 10416, seem to say that, that they have to be able to do that? Well, Your Honor, the language, the plain language of 10416 states that these are matters that are relevant to the inquiry. They're not necessarily dispositive. And so by analogy, at a criminal trial, you present all sorts of evidence that may be relevant, but that doesn't mean that one piece of evidence is necessarily dispositive. And our position is that those matters are relevant, but the ultimate inquiry is, and the standards set forth in the statute, is whether a defendant is able to understand the nature and purpose of the proceedings and assist in his defense. And assist in his defense as all of those occurrences of the situation. Yeah, Your Honor, we agree. It's certainly a part of it. It's certainly one factor. Sure, it's important that he should be able to recollect, but it's not dispositive. What does the Schwartz case seem to say about it? The Schwartz case says that the amnesia, the defendant's amnesia as to the events of the crime by itself is insufficient to render him unfit. And they basically have said, look, Schwartz could assist in his defense in other ways. He could provide counsel with his mental state for the weeks preceding the crime. And it's very similar to this case. The defendant here, like in Schwartz, had a strange relationship with his ex-wife. In this case, he had threatened to shoot her weeks before, and so the defendant can certainly talk to counsel about that. He was living with his parents at the time of the crime. He can talk to his family about his whereabouts, his emotions, his behavior, his actions in the time preceding the actual event. And so I think, just like Schwartz, Your Honor, this defendant can assist in his defense. He may not be able to provide the information as to the events of the crime, but he certainly can he certainly has the sufficient present ability to consult with counsel with a reasonable degree of rational understanding. And that's what the statute requires. Can I ask you what the standard of review is here? The trial court, you talk a lot about the appellate court. The trial court heard all of this. By the way, was the defendant there? Yes, he was. So the trial court heard all the evidence, observed the defendant, and rejected the State's argument. What's our standard of review? The standard of review, Your Honor, once the legal error is, is, that's de novo. So on the legal error, which we believe is the automatic rule, that a defendant is automatically rendered unfit due to his inability to remember the events of the crime, that, we believe, is de novo, because it created a per se rule, elevated one factor or the other. But as to, once that legal rule is corrected and we acknowledge that fitness is judged on the totality of the circumstances, the review of this Court is against whether the trial court's decision was against the manifest way of the evidence. And we posit that there was no, nothing in the record, given the reports that were in front of the trial court, to support the trial court's decision, except for the defendant's inability to assist in his defense. If we should agree, if we should agree that there should not be a bright line rule that amnesia at the time of the offense does not automatically make a person unfit, given that you've just said that the standard review then becomes manifest weight, is that factor alone sufficient to say that the finding of the trial court is not against the manifest weight of the evidence, considering all the other evidence presented? Not in this case, Your Honor. In this case, the evidence that was before the trial court, there was nothing except the defendant's inability to remember the events of the crime. There was some testimony from one of the experts, I believe, concerning standing trial with special assistance or something to that effect because of problems in remembering day-to-day. Yes. And Dr. Montani had testified, and this was uncontradicted, essentially, that the defendant's short-term memory deficits, those relating to his ability to learn and process new information, so day-to-day trial information that came, reviewing police reports and recalling that information, Dr. Montani said that those deficits could be accommodated if the defendant were given copious notes, if they slowed down the trial and giving him multiple breaks. And so there's no question the defendant hasn't disputed that those accommodations wouldn't make the defendant, wouldn't render him fit. And so the only question is whether the defendant's amnesia, and that's the only factor that's left in the record, to support the trial court's finding. You are then asking, in a way, for a bright-line rule out of this Court, right? Because as I mentioned earlier, 10410 says that inability to assist in one's defense can encompass the fact that you can't remember the circumstances surrounding the crime, right? So you're really asking us to say if amnesia as to the elements or what occurred at the crime scene is not enough in and of itself to render inability to proceed a trial. No, Your Honor. What we're asking this Court to do is align itself with the rest of the country. Counsel, could you speak up a little bit? I'm sorry. We're asking this Court to align itself with the rest of the country. And for example, in United States v. Andrews, the Seventh Circuit said, yes, amnesia is certainly a relevant factor, but you have to look at everything. And there should be some additional circumstances that show that the defendant is unfit. And it recognized there may be those cases that exist. However, as most courts have recognized, that would be extraordinary. It would be an extraordinarily rare situation. We don't believe that it can't exist. And by way of example, Your Honor, there's one case unreported. It's the only one in the country that has ever found that a defendant was denied a fair trial as a result of his amnesia. And that finding came after trial. He was allowed to go to trial. And then post-trial, they found that his amnesia denied him the right to a fair trial. And so in that case, it's cited in Morris v. State, which is cited in our brief in footnote 43. And it's out of Wisconsin. And the reason the courts have allowed this to go to trial is because at the threshold, amnesic defendants can assist in their defense in all the ways that we've described. They can communicate. They can make decisions regarding the trial. They can choose whether to plead guilty, choose whether to go to trial, choose whether to cross-examine witnesses. These are the things that a defendant must do during trial. And he certainly can evaluate his choices and do that. Counsel, but what about the client-attorney-client relationship? How can the defense counsel be helped by the defendant in the defense if he can't remember the events surrounding the crime? I mean, that's all part of it, too, not just the trial procedure, but the actual defense. Yes, Your Honor. And we think that a defendant can, at least in this case, can talk to counsel about the events preceding. And he can assist in formulating a defense. A defendant doesn't always need to have a defense. A lot of defendants are faced with overwhelming evidence against them. And they don't always have the ability to tell their counsel anything except, sure, I did it. And there's nothing else to do except challenge the State's evidence. And in this case, there were portions of the State's evidence that the defendant did dispute. At the discharge hearing, for example, the defendant argued that he – the defendant argued that his ex-wife had taken away his child, taken away his home, taken away his best friend, and taken away his business partner. And he was distraught and suicidal. And then on top of that, he challenged the people's evidence wherein the people had not done gunshot residue testing on Erin when she left the house or on any of the victims. They never recovered the bullet that the defendant had discharged in the home, which was a necessary component of – the personal discharge of the weapon was a necessary component of the home invasion charge. And so there's a number of pieces of evidence that the defendant can still challenge and still present a defense. We recognize that it's important that he can't tell his counsel what happened. But at the same time, Your Honor, this is a matter of – it's a preliminary question. And he can, at the very least, assist in his defense in all of these other ways. And so to elevate his amnesia as to the events of the crime we think would be incorrect in this situation. Does it make any difference what the nature of the defense might be? In other words, if the defendant is posing an insanity defense, it might not make any difference. But if his defense is, she shot me, how is he – how would he be able to go forward with that defense? In this case, Your Honor, he's not charged with attempted murder or anything along those lines. In this case, he's charged with home invasion and unlawful aggravated – aggravated unlawful restraint. And so those crimes were completed at the time that he personally discharged the weapon before he let any of the hostages go. It was completed when he led Aaron down the stairs, shot the weapon, and said – So the nature of the crime – The nature of the crime is certainly relevant, Your Honor. So how does the nature of the defense come in? Well, I think you have to look at all of the evidence and determine whether the defendant can still assist in making a defense. The nature of the crime and the circumstances surrounding the offense are relevant to that – to that part, is to say, okay, let's look at all the circumstances. And this is something that the trial court didn't do here. Like, let's look at all the circumstances. Let's look at the nature of the crime. Let's see whether the defendant can reconstruct. We don't know in this case whether he can or can't because he posits that his amnesia was enough. And so all of this goes to whether he can assist in his defense. And the question for assistance is whether he has the sufficient present ability to consult with his counsel with a reasonable and – consult with his counsel with a reasonable and rational understanding. I mean, it doesn't mean that he has to present a defense. It doesn't mean he has to be able to present a defense. It just means whether he has the ability at this point in time to consult with counsel with a reasonable degree of rational understanding. Let me ask you a question following up on both Justice Thomas and Chief Justice Garvin to help me understand your response. I understand you don't want a bright-line rule that says amnesia concerning the incident is not automatically unfit. But it does seem to me you're asking for a bright-line rule that amnesia at the time of the incident cannot be enough to sustain a finding that is against the manifest weight of the evidence. Doesn't it make a difference, as Chief Justice Garvin asked, the type of crime and the type of defense that may be mounted where that might be enough to say he's unable to assist in his own defense because of that amnesia? Or would you – would not your bright-line rule preclude us from allowing that to happen? No, Your Honor. We believe that there may be a hypothetical circumstance. I have not been able to find one, Your Honor, in all the reported cases. But there may be that circumstance where given the nature of the crime, the circumstances surrounding it, the people's evidence, all of these factors, whether he can reconstruct the nature of the amnesia. And all of those factors would go into whether a defendant more so can get a fair trial. And we have to remember that the question of whether a defendant is fit is a subset of the broader due process inquiry. And so, of course, a defendant after trial can still challenge the case and say, look, look at what happened at trial. I can't get a – I didn't get a fair trial. The preliminary inquiry on fitness is whether he can at this time assist in his defense. And so what the courts have done is say, look, at this time before trial, we make a probability determination and we say it's probable that he can assist in his defense, he can get a fair trial. And then post-trial, if the defendant wants to challenge what occurred, he is certainly welcome to do that and challenge his due process right to a fair trial. And that was – that's what that case cited in Morris v. State did. It did it after trial and said, in this particular case, on these circumstances, with this evidence, we believe that the defendant didn't get a fair trial due to his amnesia, because the amnesia had locked in exculpatory information. I'd also like to just point out, Your Honors, that the Fifth District's per se rule is – it's just inconsistent with public policy. And the legislature couldn't have intended to reach unintended results such as allowing and encouraging fraudulent claims of amnesia or defendants to just claim amnesia. We have to remember that amnesia is mostly based on the defendant. And sure, if he suffered an injury, it might be that he suffers from amnesia, but it's not necessarily verifiable. So in a lot of the cases, the psychologist assumed that the amnesia exists because the injury occurred. So, I mean, it would simply encourage more claims of amnesia, and it would also allow defendants to escape criminal responsibility. Unless the Court has further questions, I'll reserve the rest for rebuttal. Thank you. Thank you. Young? Thank you, Your Honor. May it please the Court, Counsel, Justices. My name is Matt Young, and I represent the appellee, Terrace Thal, in this matter. And I'll be quite honest with the seven of you that I am nervous, and I am scared, as I stand before you today. I'm scared because I fear that if I don't do a good enough job today, the Illinois Supreme Court is going to issue an opinion that states that amnesia, under every factual predicate, will never be grounds for a finding of unfitness. That's not the law now, and it shouldn't be the law. The law is good, as it currently stands, with Schwartz and with Thal, and it doesn't need to be changed. The Terrace Thal case is unique. It's a case like no other because of the facts that you have, the fact that there is a head that has created brain damage and a mental defect, and the fact that the gun that he allegedly used, People's Exhibit 15, has the hammer pulled back in the cock position after he supposedly shot himself in the face. And then you also have the procedural history of this case, wherein the state consented and stipulated to an original fitness hearing and the finding of unfitness, which got us to the restoration of fitness hearing. The facts and the procedural history of this case are unique. But the appellate court opinion, the Fifth District opinion, is not all that different from all the other cases that have weighed in on the topic of fitness. It merely affirmed the trial court's finding related to fitness. Every other case cited by the state does. And throughout their brief and throughout argument this morning, the state has said that this case presents a per se rule, and you cannot allow this per se rule that amnesia will automatically render a defendant unfit to stand. This case hardly stands for that proposition. Much like Swartz doesn't stand for the proposition that amnesia will always get you there, will always be finding a defendant unfit, or much like Swartz doesn't stand for the proposition that it will never be grounds, Stahl doesn't stand for the proposition that it always will be. The question as it relates to... Let me ask you, Mr. Young, do you agree that that's the only reason for the finding of unfitness here? Do you agree that the amnesia at the time of the crime is the only reason in this particular case? No, I don't. Because we have to remember what we're here on. We are here on two trial court orders. One that the state stipulated to finding them unfit. And two, the order saying that he isn't fit after the restoration of fitness hearing. And all it said is that the defendant is unfit and will not become fit within a year. We don't know because the trial court chose to issue a one-line sentence in its order. We don't know why the trial court ruled the way in which it did. The trial court heard all the evidence. It had all the reports. It had all the witnesses' testimony. It considered the due process concerns that go hand-in-hand with fitness statutes. And it issued an order denying it. And then, therefore, it went to appeal. And the appellate court, when reviewing this under the Manifest Way to the Evidence Standard, which all the other cases cited by them have never reviewed it under GNOVO, when the appellate court reviews this and says there is a finding that he has not been restored to fitness, and when it considers the evidence that it heard, the three reports, Gilbert, Raven, and Montani, and all of them agree that he doesn't have any memory of the incident, that he doesn't have any memory of 48 hours prior thereto, and he cannot relate the occurrences, especially concerning the incidents alleged to counsel. All three of them agree on that topic, all three experts. And you couple that with John O'Gara's testimony regarding all the due process concerns that come with it. The appellate court, when reviewing this and comparing that evidence to the evidence of the trial court, is to consider when determining whether a defendant can assist in his own defense, such evidence being whether or not he can relate, recall, and observe the occurrences, especially concerning the incidents alleged, and communicate those to counsel. When the appellate court reviews that, and that fact is undisputed, and it is there, how, under the Manifest Way to the Evidence Standard, could the appellate court possibly say, Judge Fisk, your ruling was against the Manifest Way to the Evidence? You and counsel don't necessarily disagree, then, because my question with respect to whether she was looking for a bright-line rule, she said no as well. So tell us how to write this case. You started by saying you're worried, scared, whatever, that we're going to come out with a bright-line rule. There is an issue with respect to Amnesia standing alone at the time of the crime, right? I mean, she relates it in her briefs. Any defendant coming in and just saying, I just can't remember what happened, boom, you're unfit. That presumes, with that question, that the Stahl case stands for the proposition for which they say it does. That it says it's automatically, amnesia as to the events or the occurrences alleged, automatically renders you unfit. It doesn't say that. We don't know why the trial court ruled the way it did, but it did. And the trial court is presumed to know the law and to apply it properly. The appellate court, when reviewing it, though, and reviewing the evidence that the trial court heard and reviewing the evidence that the type of evidence that the court is to consider during this fitness hearings, said it can't be reversible error. It doesn't stand for the proposition that it's always going to be. The appellate court, in this opinion, when you go back and read it, it says we can't find reversible error. We can't find that it's against the manifest way of the evidence when the evidence that he considered comported with the type of evidence that he is to consider by the statute. So they're not asking, you know, this case doesn't stand for the presupposition that it creates an automatic rule. So I don't think that if you reversed it, I think to answer your question, how do you make it right, you affirm it. Because if you reverse it, if you reverse the case that says amnesia under this fact, and the defendant's inability to observe, recollect, and relate the occurrences, especially concerning the incident alleged, communicate those with counsel. If you can't do that, and you compare it to the statute, if you're going to pay more than just lip service to the statute as to what type of evidence they are to consider, and we finally have a case that says, yeah, it's not against the manifest way of the evidence, where it says, yeah, it was not reversible error to find him unfit. We finally have this case now. Then if the cases mean anything, if they mean that it doesn't stand for the proposition that amnesia never will be, if the Schwartz case stands for the proposition that it doesn't mean, and, you know, she always said, you know, we're not saying that amnesia never will be. But if you reverse this case, it's the only one that has it, and you are, in effect, creating that bright line rule that says amnesia without warrant, and under every given factual predicate possible, is not grounds for a finding of unfitness. Mr. Young, let me read a little bit from the appellate court opinion. It's important, in paragraph 7, it's important to note that while Schwartz court held that complete amnesia of the events surrounding the charged behavior does not automatically support a finding of unfitness, the court did not hold that a defendant who lacks any memory of the events at issue may never be found unfit on this basis alone. In that regard, this case is distinguishable. Going on, thus, the fact that the defendant may be able to discuss aspects of the trial with his attorney does not override the fact that he is unable to provide his attorney with any information concerning the crime's charge. That sounds a lot like a bright line rule, doesn't it? No. Okay. I don't think so, Judge, because you have to consider what it is. I've said it a lot, but you have to consider. Well, I understand you're saying there are other factors we consider. And as I ask counsel for the State, it seems to me you're asking us not to impose a bright line rule so that this could never be the basis alone on the basis of manifest weight. But it seems to me the appellate court did create a bright line rule. Here's how I would respond to that, Justice Carmona. We have to remember what is and what isn't at issue before the appellate court. What isn't at issue was whether or not Terrace Stahl should have received an original fitness hearing because he had claimed amnesia. That was never an issue before the appellate court, and it wasn't something that was ever decided because, as we know, the State consented to that original fitness hearing, and they consented, stipulated, to the original finding of unfitness. So this case doesn't stand for the proposition, because it wasn't an issue, that amnesia will get you a fitness hearing automatically. We know that because whether or not Terrace Stahl should have got the original fitness hearing in the first place was never even considered and was never even before the court. All that was before the court. The only issue that was before the court was whether or not the trial court's determination that Terrace Stahl had not been restored to fitness was against the manifest weight of the evidence. That's why it's different. And that's why I don't think that we are turning the law on its head. I take it you're not opposed to a finding that this is not a bright line. Amnesia is not a bright line automatic unfitness. No doubt. I think it would be entirely short-sighted for this court to say either way, that amnesia will always get you there or that amnesia will never get you there. And that's not what Stahl holds. Stahl doesn't say that it's always going to be a finding of unfit. It just doesn't. When they reviewed the trial court's order that he had not been restored to fitness, and when the evidence that it considered comported with the type of evidence that it is to consider, they couldn't find reversible error. What more was there? Well, what more we have, as opposed to just the amnesia, is all of the topics of inquiry that were brought up by John O'Gara regarding the due process and then the actual facts of this case, numero uno being the fact that this gun has its hammer in the cock position. You ask the question to the state, if the defense is, well, she shot me and we got a blank page, how could we possibly enter that defense? This is going to go untested, uncontradicted, unchallenged. They are going to say he shot her. That is not circumstantial evidence. That is direct evidence. That is enough to sustain convictions on this. So I think my question to her was whether it makes any difference what the nature of the defense would be. You seem to be saying that because you might be contesting the facts of the case, it makes a difference. I don't Would it make a difference if the defense was insanity? Well, I will tell you, all of the cases that have considered this and found them fit, they have been, all the defenses that have been raised have been insanity defenses. And the defendant's inability to recall the occurrences actually just goes to further support that defense. The thing that concerns me, according to Justice, I think it was Justice Carmichael's question, about in writing this opinion for this Court, we can say amnesia doesn't get you there or doesn't preclude you. But if it shows in this case that there wasn't anything else except amnesia, now aren't we really establishing a bright-line rule anyway? I don't think so, Chief Justice Garmon, because the question is always in fitness cases, the question is it always has to come down to is whether, given the particular facts of the case, coupled with the defendant's amnesia concerning the incident alleged, allows the accused to rationally assist in his own defense. And all you are saying here is that in this case, in order to these facts, when he has, and so let's just distinguish it from Swartz then. When he has, in Swartz, psychogenic amnesia and Tara Stahl has physiogenic amnesia, actual brain damage that is creating an actual mental defect that is not allowing him to remember the occurrences of the incident alleged, or for 48 hours prior there too, no one says he's faking. All three doctors say that it is real, he's not malingering it compared to Swartz that said that you could treat the amnesia with clinical hypnosis or sodium amytal, and the defendant in Swartz admitted to committing the crime. And we don't have that here. We can't have that here because the testimony from the alleged victim, the ex-wife, was that Tara Stahl shot himself in the face. Now, I made a reference to it in my brief, but the idea of someone going to shoot themselves, they either put the gun to their head or their mouth, but they don't hold it out in front of their face and shoot themselves. But she said he shot himself in the face, and I have a one-year-old, and he knows when I say point to your head, he points to his head, and when I say point to his face, he points to his face. He knows the difference between them. But with that said, now you have the testimony of her shooting him in the face, and then you have this cocked gun, which we can't explain. Can I ask you a question? I mean, I understand your argument about the cocked gun, but you said that the trial court's order basically just denied the motion for restoration. We're kind of struggling with what was the trial court doing? What was the trial court's rationale? We're trying to know what was going on in the hearing. There was evidence, was there not, about the, from all of the experts, the three experts, about his delayed memory problems. His greatest trouble was with delayed memory, that is the ability to recall verbal and visual information after a delay of 20 to 30 minutes. And then Montani testified that there had been some improvement since that earlier – those two earlier diagnoses. And what she said, his memory was intact for up to five minutes. I mean, did any of that memory loss piece fit into the trial court, that all was presented to the trial court? The idea that these things could be accommodated, was there any discussion about that, about whether this delayed memory retention was part of the trial court's decision making? There was a whole lot of discussion. The state's attorneys, Debbie Phillips, made that argument a lot to the court, saying that he can be accommodated. And Judge Fiss, I don't know the page number of the record, but he asked her, what about his ability to have memories concerning this incident alleged, though? So we know he's at least conforming to considering the type of evidence that the legislature has written out that the courts are to consider in these hearings. And we know that Debbie Phillips made that argument, that hey, he can be accommodated. But he can't remember anything about the occurrence of the incident alleged, but if we give him breaks, and we give him a piece of paper and a pen, he can help his defense counsel read police reports. And he can assess witness testimony. I don't need my client to help me read a police report. I don't need my client to tell me how he thinks that witness did on the stand in front of the jury. These simply just aren't things that lawyers trying criminal defense cases need. What we need is to know, hey, look, here's their story, what's yours? That's the case, Mr. Young, in every amnesia case, right? I mean, even when you talk about the physical versus the mental aspect of amnesia, right? I mean, all the court has to go on is the testimony of witnesses. And when someone said he has amnesia as to what happened at the crime scene, whether it's a physical manifestation of that or not, that's the testimony, and that's what the court has to rely on. This is the fourth time I think you're going to hear it now. It's very difficult to see. We talk all the time about how we don't write Rule 23s here. It's very difficult to see. We've gone back and forth as to what is the additional element here outside of the amnesia at the crime scene that rendered him unfit by the trial court. And I just can't see it because even when he had the second fitness hearing, the reliance went back to the experts from the first fitness hearing in which they said that there was amnesia. I mean, whether you or opposing counsel wants this opinion to be short of a bright-line rule one way or another, I wish we had had more discussion on why there should be a bright-line rule one way or another rather than why there isn't a bright-line rule at issue here. Well, I think to answer your question, that means if there has to be something else other than amnesia, if this court has to hear something other than amnesia in order to find him unfit, then that means that the law as it currently stands is that amnesia alone does not support a finding of unfitness. That is a bright-line rule. That is not the law. The law is that amnesia alone will not always, does not per se, grant you a finding of unfitness. We have to look at the facts. We have to hear the cases. Schwartz said the court very seriously questioned his amnesia. I'm out of time. I'll rely on our... Let me complete your answer. The court said that his amnesia can be fixed. It questioned the authenticity of it. It can be treated. Terror stalls can't. The defendant in Clay, the court said he wasn't even amnesiac at all. This is the only case where everyone agrees that, yes, he is a complete amnesiac. And so that's why I think it's different, Judge. Thank you. Thanks. Thank you, Mr. Chief. I'd like to start, Your Honors, by responding to counsel's discussion of the gun. As I stated before, the gun itself is not relevant to what he was charged with. There's an abundance of evidence showing that the defendant went to Aaron's house. There was a burglar alarm that went off. There was a 911 call. These hostages came out one by one. This was 4 a.m. This is certainly not the circumstance where he was lured there or anything along those lines. But the point is that the gun itself, the shooting of the defendant, occurred after the crimes were completed. And so whether it was cocked or not is simply not pertinent to the crimes charged, Your Honors. I'd also like to emphasize, Your Honors, that we are not asking for the bright line rule because we recognize that there might be those circumstances that exist where an amnesiac defendant might be rendered unfit. Most of the time we think that that will come after trial, on a due process inquiry, on a due process challenge. Not before trial. This is a unique case, Your Honors. There was a discharge hearing, so the trial court knew the evidence. And normally, a defendant is found unfit or fit before a discharge hearing. And in this case, he was found unfit, so there was a discharge hearing. So in normal cases, the trial court doesn't know the evidence. It doesn't know the nature and the circumstances of what's coming in. It doesn't know any of this information before trial. And it's important that because defendants are presumed to be fit, it's important that we allow these cases to go forward where he can assist in his defense in all of these other ways. Are you suggesting that the State was wrong in stipulating to the defendants unfitness? The initial stipulation, Your Honors? Yes. No, Your Honor. And that's a perfect question. So why was that correct? Why was it correct for the initial fitness? And then, of course, my question is, what changed? So that's a perfect example, Your Honors, where it wasn't just the amnesia relating to the events of the crime, but something more. And that something more was that the defendant couldn't follow proceedings. If he were sitting here today, he couldn't follow from what Justice Thomas said five minutes ago to what you're saying now. And so he wouldn't be able to process that information. He wouldn't be able to talk to his counsel about that information. He wouldn't be able to recall it at all. And so during the context of a trial, and the question of fitness is whether a defendant can function within the context of a trial, he wouldn't have been able to because he couldn't process anything. He couldn't review the police reports and remember that information five minutes later. That short-term memory deficit was the reason the people stipulated to the unfitness determination. And that's evidenced by Dr. Rabin's report, which expressly says that it's the short-term memory deficits that renders the defendant unfit. If the defendant only had the circumscribed amnesia as to the events of the crime, Dr. Rabin would have found him fit. And so what's improved over a year, miraculously, is that his short-term memory has improved. He can recall objects after five minutes. His delayed memory has improved. These are all circumstances that point to at the very least they can be accommodated and the statute allows that. The statute allows that if there are certain facts that can be reasonably accommodated, a defendant can be found to be fit. I want to press in a little on your comment again that there are circumstances where amnesia at the crime scene could be enough. And you said you couldn't think of an earlier argument. I mean, how much better does it get than a gunshot wound to the head, especially when part of the argument is that defendants could make up the fact that they can't remember something from a crime scene? I mean, it's less likely, isn't it, in this occurrence? Sure. We don't believe that the cause of the amnesia is what's at issue. It's the present ability of the defendant. So whether the amnesia is caused by drugs, alcohol, gunshot wound to the head, car accident. I mean, there's one most. So you're looking at the amnesia. You're not segregating between time frames as to when the amnesia is occurring. Well, no, Your Honor. And, you know, I'll take it. There's a few examples out there. In United States v. Marseille, in a case very much like this one, the defendant claimed amnesia actually for six to eight years of her life due to a head injury. And she was unable to remember that. And the court said she also suffered from short-term memory deficits like this defendant. And the court said, those short-term memory deficits can be reasonably accommodated. And while the amnesia was not feigned, and the psychologist said, we can't verify the actual length of time, the defendant was still fit to go to trial. And then there's other cases where the amnesia is weak surrounding the crime, and the defendants and the courts have found that they're fit to go to trial. I think, and all of those are different reasons for the amnesia. These cases abound where it's gunshot wounds to the head. And so the cause of the amnesia is not what's relevant, because it's where the defendant's present mental state, present mental capacity. Kagan, it seems to me then you're rendering section 104.16 irrelevant, because there's several sections there, and one of them is the defendant's ability to observe, recollect, and relate the occurrences, especially those concerning the incidents alleged, and to communicate with counsel. It's not just the trial procedures to remember what witnesses said five minutes later. So that's section B. Section 2 says you have to also include the ability to work with counsel on those time of the events that occurred. So you can't just parse out. It's cumulative. But you don't seem to be arguing that. Well, we agree with that, Your Honor. We agree that it's one factor. In this case, it's the perfect example because initially he was unfit, because he had the amnesia as well as the short-term memory loss. And those couples. But he still has the amnesia. He still has the amnesia. So one section still is, he's unable to help counsel. But there are numerous cases from this Court that have said that a defendant's, for example, attempts at suicide or a defendant's limited intellectual capacity or any number of reasons. If he's a schizophrenic, whether he has a mental disease. All of these mental defects or diseases standing alone is not enough in these cases. It will be easily as one of them. And so what's going on here under that statute is that it's a totality of the circumstances test. And we're looking at everything. And to elevate the one factor in every single case, the one factor being amnesia as to the events of the crime in every single case would just lead to unintended consequences, Your Honor. I think. I know your time is running out. I hope I can get this. I'm back on the short-term memory loss. The first two doctors testified. I think it's one. They both testified. Kilbert and whatever his other name is, Rand or whatever it is, both said there is no way that he can regain the short-term memory loss. He will not be able to regain that. Later, a doctor comes in and says he did regain it. So you have two experts on one side saying he will never be able to regain short-term memory loss and one that says he has. Isn't that an issue of manifest what of the evidence? First, Your Honor, Dr. Gilbert actually said that he was not sure whether the defendant could regain his short-term memory. He said that there were reported cases where defendants have been able to. But he said no probability. I mean, your brief says Gilbert opined that there was no probability the defendant would regain his lost memory. As to the events of the crime, Your Honor, it's his short-term memory. We'll read the record. But if you have two doctors saying he will not be fit within a year, his short-term memory most likely will not come back, however strongly they say that, and another expert saying, miraculously, not a year later, but four months later, five months later, he has regained it, isn't that what trial judges do, is try to weigh the evidence? Perhaps, Your Honor, but the psychological testing that Dr. Montani conducted was as to his present mental abilities. And it's not just one of those tests that was conducted by both Dr. Rabin and Dr.  It was the ability to recall objects after five minutes. Initially, defendant was able to recall one out of three objects after five minutes. When Dr. Montani testified about a year later, he was able to recall three out of three objects after five minutes. It's also important that defendant attended the discharge hearing, and he was able to, four months later, tell Dr. Montani about what happened at the discharge hearing, evaluate the evidence, talk about it. I mean, the fact that he could listen to the testimony at the discharge hearing and then recount it, evaluate it, assess it, I mean, that shows, that's demonstrated evidence that he actually, his short-term memory has improved, perhaps miraculously, and perhaps contrary to what Gilbert and Rabin said. Thank you, counsel. Thank you, Your Honor. Case number 115804, People of the State of Illinois v. Terrace Eastall, will be taken under advisement as agenda number four. Ms. Kasich, Mr. Young, thank you for your arguments today. You're excused.